IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

COLEMAN CONSTRUCTION, INC.,
FRED COLEMAN and KATHY COLEMAN,                    CV 05-148-M-JCL

　　　　　　　　　Plaintiffs,

　　　　　　　　　　　　　　　　　　　　　　ORDER

　　　　vs.

DIAMOND STATE INSURANCE COMPANY,

　　　　　　　　　Defendant.
_____

## I.  BACKGROUND

　　　The Plaintiffs, Coleman Construction, Inc., and Fred and
Kathy Coleman ("Colemans"), commenced this action against the
Defendant, Diamond State Insurance Company ("Diamond State"), on
July 25, 2005, when they filed a Complaint in the Montana Fourth
Judicial District Court, Missoula County.  Diamond State removed
the case invoking the diversity jurisdiction of this Court under
28 U.S.C. § 1332(a).

　　　The parties agree that the facts material to this case, as
set forth below, are not in dispute.

　　　On February 11, 2002, a fire broke out in a mobile home
owned by Beverly Kudrna and occupied by her tenant, Chuck
Sundstrom.  The mobile home was located on property owned by
Kudrna in Huntley, Montana, and which had rental spaces available
for parking mobile homes or travel trailers.  The Colemans, who

ORDER/ PAGE 1

own and operate a construction company, had their 1998 Spinnaker 36-foot fifth-wheel trailer parked in a space leased from Kudrna. The Colemans' space was immediately adjacent to Kudrna's mobile home.  The fire, which destroyed Kudrna's mobile home, also spread and destroyed the Colemans' fifth-wheel trailer, as well as various items of the Colemans' personal property.

Kudrna, whose property was insured by Diamond State, notified Diamond State of the fire on February 11, 2002.  Diamond State assigned adjuster Thomas Britland to handle Kudrna's damage claim.  On February 13, 2002, Britland retained Mike Sollars of Montana Claims Services to investigate and adjust the fire loss. Britland directed Sollars to conduct a full investigation including an investigation as to the cause of the fire.

On the same day of February 13, 2002, Sollars visited the fire scene and obtained Kudrna's statement regarding the fire. Sollars learned that Kudrna's mobile home had been being leased to tenant Sundstrom.  Kudrna informed Sollars that Sundstrom had improperly been using wood pellets in a coal stove in the mobile home.  Sollars also learned that the Colemans' fifth-wheel trailer had been destroyed in the fire.  Sollars immediately contacted a fire cause and origin expert for potential assistance in the investigation.

Sollars subsequently telephoned Britland on February 13, 2002, to advise him of the progress of his investigation.  At

some point in their conversation, Sollars advised Britland of the damages the fire caused to the property of both the Colemans and tenant Sundstrom.[1]  Britland proceeded to direct Sollars not to hire the cause and origin investigator because Britland believed it was unnecessary for the adjustment of Kudrna's "first-party" losses.

Sollars ultimately submitted a written report dated February 21, 2002, to Britland in which Sollars specified the existence of property losses to the Colemans and tenant Sundstrom.  On the same date of February 21, 2002, Britland authorized a cleanup of the fire site and disposal of debris.  The parties do not state precisely when the cleanup started, who performed the cleanup, and when the cleanup was completed.[2]

On February 22, 2002, Diamond State received a written notice of the Colemans' claim for property loss by way of a facsimile transmission from Colemans' insurance agent in Missoula, Montana.  The Colemans' attorney, John Gordon, subsequently sent a letter dated March 1, 2002, advising Britland

---

[1]The Colemans contend that Sollars provided this information to Britland in the February 13 conversation.  Britland does not recall precisely when he was advised of the third party losses, but acknowledges he cannot dispute that Sollars advised him of the losses on February 13.

[2]The Court has reviewed the entire record as developed upon the parties' motions for summary judgment, but does not find any information which sheds additional light upon the time frame in which the cleanup was accomplished.

ORDER/ PAGE 3

that he represented the Colemans relative to their insurance claim.

Diamond State asserts that Britland worked as a first-party property claim adjuster, and, in general, did not handle claims for losses to third parties. According to Diamond State, if Britland learned of third-party losses while he was handling a first-party claim, he generally would pass that information on to a third-party adjuster for Diamond State. In this case, Britland did not notify a third-party claims adjuster of the destruction of the Colemans' trailer until after he received the March 1, 2002 letter from the Colemans' attorney.

Diamond State ultimately assigned the Colemans' claim to adjuster George Utter. On April 26, 2002, Diamond State denied the Colemans' insurance claim.

The Colemans proceeded to file a lawsuit against Kudrna in the Montana Thirteenth Judicial District Court, Yellowstone County alleging Kudrna was liable for their property damage. *Coleman Construction, Inc., et al. v. Kudrna*, No. DV 03-0033. The Colemans advanced claims for relief founded upon negligence and violations of the Montana Residential Landlord and Tenant Act, Mont. Code Ann. § 70-24-101 et seq. After a jury returned a verdict in favor of Kudrna, a judgment was entered in her favor which included an award of $22,866.50 in attorneys fees under the Montana Residential Landlord and Tenant Act.

The Colemans subsequently filed this lawsuit against Diamond State seeking both compensatory and punitive damages.  Among the compensatory damages sought by the Colemans is a claim for the attorneys' fees and costs they incurred in prosecuting the underlying case against Kudrna as well as the attorneys' fees and costs they were required to pay Kudrna under the state court judgment.[3]

The Colemans allege Diamond State is liable in three respects.  First, the Colemans contend Diamond State failed to conduct a reasonable investigation into the cause and origin of the fire before denying the Colemans' claim in breach of the Unfair Trade Practices Act (UTPA), Mont. Code Ann. § 33-18-201(4), and the common law duty of good faith it owed the Colemans.  Second, they contend Diamond State failed to attempt to effectuate a prompt, fair, and equitable settlement when liability was reasonably clear in violation of the UTPA, Mont. Code Ann. § 33-18-201(6).  Third, they contend Diamond State

---

[3]The parties have stipulated that any attorneys' fees incurred in the prosecution or defense of this case are not recoverable under Montana law.  *Mountain West Farm Bureau Mutual Ins. Co. v. Brewer*, 2003 MT 98, ¶ 40, 315 Mont. 231, ¶ 40, 69 P.3d 652, ¶ 40; *Sampson v. National Farmers Union Property and Cas. Co.*, 2006 MT 241, ¶ 22, 333 Mont. 541, ¶ 22, 144 P.3d 797, ¶ 22 (2006). However, the Colemans' seek to recover as damages in this case, the various expenses and costs they incurred in their underlying lawsuit against Kudrna.  Those expenses and costs include the Colemans' attorneys' fees, their expert investigation expenses, and Kudrna's attorneys' fees which the Colemans paid to her in the underlying litigation.

committed the tort of spoliation of evidence by authorizing a

destruction of the fire scene when Diamond State had actual

knowledge of the Colemans' potential claims against Kudrna.

Presently before the Court are the following motions for

summary judgment pursuant to Fed. R. Civ. P. 56:

> (1) Plaintiffs' Motion for Partial Summary Judgment
> requesting the Court to determine, as a matter of law, that:
> (a) Diamond State had a duty to conduct a reasonable
> investigation when it learned, on February 13, 2002, that
> the fire destroyed the Colemans' property; and (b) that
> Diamond State had a legal duty to preserve evidence by not
> destroying the fire scene when it learned on February 13,
> 2002, that the fire had destroyed the Colemans' property;
>
> (2) Defendant's Motion for Summary Judgment requesting the
> Court to enter judgment in the Defendant's favor, as a
> matter of law, on the Plaintiff's claims for common law bad
> faith, violation of the UTPA, and the spoliation of
> evidence; and
>
> (3) Defendant's Motion for Partial Summary Judgment
> requesting the Court to determine, as a matter of law, that
> the Colemans are not entitled to recover as damages in this
> action the attorneys' fees and litigation expenses incurred
> in the prosecution of, or as a result of the judgment
> entered in, the underlying litigation against Kudrna.

## II.  APPLICABLE LAW

### A.  Summary Judgment Standards

Federal Rules of Civil Procedure 56(c) entitles a party to

summary judgment "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  In deciding a motion

for summary judgment, the Court views the evidence in the light

most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

## B. <u>Application of Montana Law</u>

Because jurisdiction over this action is founded upon diversity of citizenship, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).  To the extent the case raises an issue of state law and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case."  306 F.3d at 812 (citation omitted).  In reaching such a determination, the Court should rely on persuasive authorities, including treatises and decisions from other jurisdictions, as guidance. *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996).

## III.  <u>DISCUSSION</u>

### A.  <u>The Duties of Diamond State</u>

At their core the parties' motions for summary judgment raise the question of what legal duties Diamond State owed to the Colemans under the circumstances of this case.  The Colemans

argue that because Diamond State had actual notice that the fire which originated in its insured's mobile home caused damage to the property of a third party, Diamond State was legally obligated to thoroughly investigate the fire to determine its cause, and to preserve evidence relating to that cause.  Diamond State retorts that it was under no legal obligation to investigate the cause of the fire because it was not presented with any third-party claim between February 11, 2002, and February 21, 2002, when it authorized a cleanup of the fire origin site.  According to Diamond State, because it had no duty to "anticipate claims", it cannot be held liable under either the common law duty or the UTPA for failing to investigate the Colemans' claim or failing to effect a prompt and equitable settlement of the claim since no claim was presented prior to the cleanup.  Likewise, Diamond State contends that because it was not presented with a claim from the Colemans prior to the cleanup, it cannot be held liable for the tort of spoliation of evidence under Montana law.  In view of the parties' positions, analysis must begin with a review of the substantive law of Montana as it pertains to the duties of liability insurers with respect to third-party claimants and the tort of spoliation of evidence.

The duties a liability insurer owes to third-party claimants have been established in Montana, both as a matter of common law

and statutorily under the UTPA.  The provisions of the UTPA
establish certain duties with which a liability insurer must
comply in its handling of insurance claims.  Those duties, framed
in terms of prohibited conduct, are set forth in Mont. Code Ann.
§ 33-18-201.  These duties address the relationship between a
liability insurer and a third-party claimant once a claim has
been filed.  *See Thomas v. Northwestern Nat. Ins. Co.*, 292 Mont.
357, 365, 973 P.2d 804, 809 (1998) (discussing first-party
claims).  In other words, the duties imposed upon a liability
insurer by § 33-18-201 are "triggered" when a claim is made.
*Stuart v. State Farm Mut. Auto. Ins. Co.*, 27 M.F.R. 453, 458 (D.
Mont. 2000).  "[T]he duty is upon the claimant to file his claim"
with the insurer, and § 33-18-201 does not apply unless a claim
is made.  *Id*. (citing *Grenz v. Fire and Casualty of Connecticut*,
260 Mont. 60, 65, 857 P.2d 730, 733 (1993) and *McNeil v. Currie*,
253 Mont. 9, 17-18, 830 P.2d 1241, 1246 (1992)).  Among the
duties which are triggered when a claim is made are: (1) the duty
to conduct a "reasonable investigation based upon all available
information" before refusing to pay a claim; and (2) the duty to
"attempt in good faith to effectuate prompt, fair, and equitable"
settlement of a claim "in which liability has become reasonably
clear".  Mont. Code Ann. § 33-18-201(4) and (6).

As a matter of common law, a liability insurer owes a third-
party claimant a duty of good faith and fair dealing, the breach

of which gives rise to the insurer's liability.  *See Brewington v. Employers Fire Ins. Co.*, 1999 MT 312, ¶¶ 14-18, 297 Mont. 243, ¶¶ 14-18, 992 P.2d 237, ¶¶ 14-18 (1999).  The standard of compliance with the duty is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *Story v. City of Bozeman*, 242 Mont. 436, 450-51, 791 P.2d 767, 775-76 (1990).

The tort of spoliation of evidence is designed to impose liability, under appropriate circumstances, upon one who has a duty to preserve evidence, but who deliberately, mistakenly, or accidentally destroys or loses, or in other words "spoils" evidence.  *See* 14 Couch on Insurance 3rd ed., § 208:29.  Montana has recognized the tort of negligent spoliation of evidence. *Oliver v. Stimson Lumber Co.*, 1999 MT 328, 297 Mont. 336, 993 P.2d 11.  This tort, as recognized in Montana, consists of the following elements:

(1) existence of a potential civil action;

(2) a legal or contractual duty to preserve evidence relevant to that action;

(3) destruction of that evidence;

(4) significant impairment of the ability to prove the potential civil action;

(5) a causal connection between the destruction of the evidence and the inability to prove the lawsuit;

(6) a significant possibility of success of the potential civil action if the evidence were available; and

ORDER/ PAGE 10

(7) damages[.]

*Id.* at ¶ 41.  The duty of a third party, not in contractual
privity with a claimant, to preserve evidence can arise when
there exists a "special circumstance/relationship" between the
parties.  *Id.* at ¶ 42.

The overriding issue in this case is whether or not Diamond
State had a duty, under the circumstances of this case, to
preserve evidence of the fire scene so as not to hamper the
Colemans in maintaining an action for damages against Kudrna,
Diamond State's insured.  As noted in a leading treatise on
insurance law:

> Insurers, who routinely take custody of physical evidence in
> the course of investigating both first- and third-party
> claims, are particularly susceptible to claims of spoliation
> of evidence if the items in their charge are ... destroyed
> or lost.  Spoliation actions, in such cases, may be brought
> by insureds who are hampered in maintaining actions against
> third parties, by third parties who are hampered in
> maintaining actions against the insured, and by third
> parties who are hampered in maintaining other actions or
> injured in other ways.

14 Couch on Insurance 3rd ed. § 208:29.

Although the Montana Supreme Court recognized the tort of
spoliation of evidence in *Oliver v. Stimson Lumber Co.,* it has
not had occasion to address the application of the tort in
factual circumstances like those presented in this case.
Therefore, the Court must undertake to predict whether, under the
circumstances of this case, the Montana Supreme Court would
recognize that Diamond State owed the Colemans a duty to preserve

ORDER/ PAGE 11

the fire scene and thereby preserve evidence relating to the
cause of the fire so as not to hamper the Colemans in the
prosecution of a claim for damages.  *See Medical Laboratory Mgmt.*
*Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d at
812.  Resolution of the issue necessarily entails discussing the
interplay between the tort of negligent spoliation of evidence
and the duties imposed upon a liability insurer under the UTPA
and the common law of Montana as previously discussed.

    **B.**  **The Duty of a Liability Insurer to Preserve Evidence**

The existence of a legal duty is a question of law for the
court's determination on summary judgment.  *Jackson v. State of*
*Montana*, 1998 MT 46, ¶ 31, 287 Mont. 473, ¶ 31, 956 P.2d 35, ¶
31; *Estate of Strever v. Cline*, 278 Mont. 165, 171, 924 P.2d 666,
669 (1996).  The Montana Supreme Court has held:

> [t]he existence of a duty of care [in a negligence-based
> action] depends upon the foreseeability of the risk and upon
> a weighing of policy considerations for and against the
> imposition of liability.

*Jackson*, at ¶ 38 (quoting *Singleton v. L.P. Anderson Supply Co.,*
*Inc.*, 284 Mont. 40, 44, 943 P.2d 968, 971 (1997)).  Considering
these factors of foreseeability and public policy considerations,
the Court finds that under the circumstances of this case,
Diamond State, as a liability insurer, had a duty to preserve the
scene of the fire and thereby preserve evidence relating to the
cause of the fire.

1.   **Foreseeability of a Risk**

The foreseeability element of the legal duty inquiry is determined based on reasonableness.  The inquiry turns on "what the reasonably prudent person would then have foreseen as likely to happen." *Jackson*, 1998 MT 46, ¶ 54, 287 Mont. 473, ¶ 54, 956 P.2d 35, ¶ 54 (citations omitted).  Thus, foreseeability is a limitation on liability and "is of prime importance in establishing the element of duty."  *Id*.  "Simply put, if a reasonably prudent person can foresee no risk of injury, that person is not negligent."  *Id*. (citing *Mang v. Eliasson*, 153 Mont. 431, 437, 458 P.2d 777, 781 (1969)).  Furthermore, the duty "is measured by the scope of the risk which negligent conduct foreseeably entails." *Estate of Strever*, at 173, 924 P.2d at 671.  The greater the risk in terms of likelihood and severity, the greater the care that must be exercised.  *Id*. at 173-73, 924 P.2d at 671.

The relationship between a liability insurance carrier and a third party claimant supports the foreseeability of harm to the claimant caused by the loss of evidence.  *Thompson v. Owensby*, 704 N.E.2d 134, 137 (Ind. App. 1998).  The insurer's relationship to a third party claimant arises by virtue of the insurer's obligations to investigate and evaluate claims made by an insured, and the insurer's possession or control over evidence relative to the insured's claims.  *Id*.  The creation of this

relationship "could warrant recognition of a duty [to preserve evidence] if the carrier knew or should have known of the likelihood of litigation and of the claimant's need for the evidence in the litigation."  *Id.*

As stated in *Thompson*, liability insurers "are no strangers to litigation", and are aware of the need for evidence relative to the litigation that is likely to occur.  *Thompson*, 704 N.E.2d at 137.  Consequently, where it can reasonably be anticipated that an insured may have liability exposure, the insurer cannot credibly contend it was unaware of the potential importance of the evidence relative to the insured's liability.  *Id.*  The potential for litigation against the insured, and a third party claimant's inability to establish the underlying claim against the insured caused by the loss of evidence relative to the insured's liability, would be foreseeable to a liability insurer. *Id.* at 137-138.

Under the facts of this case it was entirely foreseeable to a liability insurer like Diamond State that its insured, Kudrna, could face potential liability for the destruction of the Colemans' property.  Diamond State, therefore, had a duty to take reasonable steps to preserve evidence from the fire scene until the issue of Kudrna's liability to the Colemans could be adequately investigated.

### 2.   __Public Policy Considerations__

The relevant public policy considerations to be weighed in determining the existence of a duty of care include the following:

> (1) the moral blame attached to a defendant's conduct; (2) the prevention of future harm; (3) the extent of the burden placed on the defendant; (4) the consequences to the public of imposing such a duty; and (5) the availability and cost of insurance for the risk involved.

*Singleton v. L.P. Anderson Supply Co., Inc.*, 284 Mont. 40, 44-45, 943 P.2d 968, 971 (1997).

In weighing the considerations identified in *Singleton*, the Court bears in mind that the policy considerations relative to an insurer's obligations to preserve evidence are not based on the insurer's obligations toward a particular third-party claimant, but are instead based on the insurer's business practice obligations.  *Thompson*, 704 N.E.2d at 138.  Inherent to a liability insurer's business is its need for efficient and effective practices for the collection and preservation of evidence.  *Id.*  Also, an insurer "is in a better position than the lay claimant to understand the significance of evidence and the need to maintain it", and that position imposes a duty on the insurer to maintain the evidence.  *Id.*  Satisfaction of this duty does not require any particular conduct towards a third-party claimant, but requires only the exercise of "an appropriate degree of care in maintaining evidence that could have been

ORDER/ PAGE 15

relevant to an underlying claim." *Id*.  Such maintenance

practices benefit the insurer as much as they benefit the third-

party claimant.  *Id*.

The court in *Thompson* summarized the foregoing policy

considerations as follows:

> A liability carrier like the Insurance Company is in a
> unique position among tort litigants.  Using its experience,
> a carrier is able to adopt business practices that lead to
> resolution of claims at the lowest possible cost to the
> carrier.  The claims-resolution practices thus benefit the
> carrier and its shareholders, and can benefit third party
> claimants and insureds so long as the carrier uses
> responsible, efficient practices.  It is reasonable for the
> law to require that claims resolution practices be
> responsible, because the carrier has the unique experience
> and ability to structure its practices to avoid harm.  If a
> carrier intentionally or negligently engages in a claims-
> resolution practice that breaches the standard of care
> established by law, a third-party claimant is justified in
> seeking to hold the carrier liable for damages arising from
> the breach.

*Thompson*, 704 N.E.2d at 139-40.

The observations of the court in *Thompson* are not only

instructive but consistent with Montana law.  Among the other

duties it imposes on insurance companies, the UTPA requires an

insurer to "adopt and implement reasonable standards for the

prompt investigation of claims arising under insurance

policies[.]"  Mont. Code Ann. § 33-18-201(3).  The Court

acknowledges that § 33-18-201(3) does not provide a basis for a

private cause of action against an insurer, since such actions

are limited by Mont. Code Ann. § 33-18-242(1).  The fact that

subsection (3) is a non-actionable provision of the UTPA does

ORDER/ PAGE 16

not, however, relieve an insurer of the obligation to comply with subsection (3).  *West v. State Farm Mut. Auto. Ins. Co.*, 27 M.F.R. 219, 222 (D. Mont. 2000).  An insurer's obligations under the non-actionable UTPA provisions are relevant to other causes of action under the UTPA, and provide legal support for making a remedy available to a plaintiff.  *Id.*

Imposing a burden upon a liability insurer to preserve a fire scene when the insurer knows that property damage has occurred to a third party is hardly onerous.  In fact the burden pales in comparison to the burden which would be imposed upon the public if such a duty were not recognized.  A rule to the contrary would have the undesirable effect of allowing a liability insurer to avoid responsibility by disposing of evidence prior to a third party presenting a claim to the insurer.  In this case, for example, Diamond State contends that even though it had knowledge of the destruction of the Colemans' property, it should not be held responsible because the Colemans did not present a claim before Diamond State decided to clean-up the fire site.  Diamond State argues the Court should accept its position because the Colemans were immediately aware of the destruction to their fifth-wheel trailer.  Under the rule advocated by Diamond State, the law would condone a liability insurer avoiding liability by simply disposing of evidence at the fire scene prior to the third-party claimant ever receiving

notice of the destruction of his property.  The untoward consequences which could result from such a rule are evident.

For the reasons stated, the Court concludes Montana law imposes a duty on a liability insurer to preserve evidence under the circumstances presented in this case.  A liability insurer in the position of Diamond State cannot credibly argue that it was not foreseeable that the Colemans would present a third-party claim for the destruction of their trailer.  Moreover, the Court is confident that the public policy considerations discussed would result in the Montana Supreme Court recognizing the existence of a duty on the part of a liability insurer like Diamond State to preserve a fire scene.

Diamond State also contends that even if it were subject to a legal duty to preserve evidence, it cannot be held liable for failing to preserve evidence for the Colemans because it had a reasonable basis in law or in fact for its conduct.  *See Palmer by Diacon v. Farmers Insurance Exchange*, 261 Mont. 91, 102, 861 P.2d 895, 901 (1993).  *See also* Mont. Code Ann. § 33-18-242(5) (codifying the reasonable basis defense for UTPA claims). Diamond State argues it was reasonable for it to authorize the fire site to be cleaned up on February 21, 2002, because by that time the Colemans had not submitted their insurance claim to Diamond State.  Diamond State's argument, however, is premised on its legal contention that it had no legal duty to the Colemans to

preserve the fire scene evidence because the Colemans had not submitted an insurance claim.  The Court's conclusion that Diamond State had a legal duty to preserve the fire scene defeats Diamond State's reasonableness defense.

Having established the duties with which Diamond State was obligated to comply, the Court turns to address the parties' motions for summary judgment.

### C. Colemans' Spoliation Claim

Diamond State requests summary judgment dismissing the Colemans' spoliation claim on two alternate grounds.  First, Diamond State contends it had no legal duty to preserve evidence for the Colemans.  Having determined that Diamond State did have such a duty, this aspect of Diamond State's motion is appropriately denied.

Second, Diamond State contends that the Colemans cannot establish each of the other elements of spoliation recognized in *Oliver*, supra.  In particular, Diamond State argues the loss of the evidence from the scene of the fire did not cause the Colemans to lose their liability claim against Kudrna.

In support of their causation argument Diamond State refers to the report of their expert, Chris Rallis.  Mr. Rallis's report presents his opinion that even before the scene of the fire was cleaned up, it was not possible to determine the cause of the fire to a reasonable degree of scientific certainty given the

condition of the post-fire scene.  Diamond State asserts that the Colemans do not have any evidence or expert opinion testimony to rebut Mr. Rallis' opinion, or to establish the cause of the fire. Therefore, Diamond State contends the Colemans cannot establish a causal connection between the loss of the fire scene evidence and the Colemans' inability to successfully pursue their legal claims against Kudrna.

The Colemans do not present any argument or evidentiary materials in response to Diamond State's causal connection argument.  At most, the Colemans point out that Kudrna's defense in the underlying case relied in part on the failure of the Colemans' expert, Ron Cummings, to physically inspect the fire scene or any evidence preserved from the fire scene.

The Court notes that other than Mr. Rallis' opinion, Diamond State has not presented any additional evidentiary matters that disprove the Colemans' spoliation claim and the element of causation relative to the spoliation claim.

"A moving party without the ultimate burden of persuasion at trial - usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Diamond State may carry its summary judgment burden by either submitting evidence that affirmatively disproves the

causal element of the Colemans' spoliation claim, or showing that the Colemans do not have enough evidence of an essential element to carry their ultimate burden of persuasion at trial.  *Id.* at 1102.  Diamond State attempts to rely upon both of these alternatives; it rests its motion upon Mr. Rallis' opinion and its argument that the Colemans do not have sufficient evidence to prove their claim.  Diamond State's burden, of course, is to "show" the district court that there is an absence of essential evidence to support the Coleman's claim.  *Celotex Corp.*, 477 U.S. at 325.  While disagreement exists among the courts, the Ninth Circuit has recognized that the *Celotex* "showing" may be made by argument alone.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  Therefore, Diamond State has satisfied this showing.

While Diamond State may have satisfied its initial burden of production through its argument and Mr. Rallis' opinion, it has failed to sustain its ultimate burden of persuasion.  The Court finds the Colemans have at least identified sufficient facts to raise a genuine issue of material fact on the causal connection element of their spoliation claim.  The fact that Kudrna relied on the Colemans' expert's failure to inspect the fire scene highlights the fact that the expert was unable to inspect the fire scene because Diamond State authorized it to be cleaned up.  Mr. Rallis' expert opinion as to the inability to determine the cause of the fire does not conclusively resolve the factual issue

of whether the cause of the fire can be determined.  Rather, Mr. Rallis' opinion is simply evidence which the jury may weigh in consideration of all the other evidence presented to the jury. In this summary judgment proceeding the Court cannot weigh the evidence of Mr. Rallis' opinion, or determine the truth of the matters presented therein.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

For purposes of its summary judgment motion Diamond State has not sustained its burden of persuasion in establishing that there exists a complete absence of evidence to support the Colemans' spoliation claim.  The Colemans have identified factual matters in support of their claim which are sufficient to raise a genuine issue of material fact.  Therefore, this aspect of Diamond State's motion for summary judgment on the spoliation claim is also properly denied.

D.  **Colemans' UTPA Claims**

As discussed, the Colemans assert Diamond State is liable under the UTPA for failing to conduct a reasonable investigation and failing to settle their claims when liability was reasonably clear.  Relying upon *Stuart v. State Farm*, infra, Diamond State requests summary judgment dismissing the Colemans' UTPA claims upon the ground its obligations under the UTPA were not triggered until February 22, 2002, when the Colemans submitted their insurance claim.

As the foregoing discussion of Montana substantive law establishes, the obligations owed by Diamond State to the Colemans under the UTPA were not triggered until February 22, 2002.  As of that date, Diamond State had an obligation to conduct a "reasonable investigation" based upon all available information and to settle the Colemans' claim if liability was reasonably clear.  Mont. Code Ann. § 33-18-201(4) and (6). Whether Diamond State satisfied that duty will, of course, be assessed by the jury in light of the history of events which led to, and created the circumstances that existed on February 22. This history will include evidence bearing upon the issue of whether Diamond State breached its duty to preserve the fire scene and evidence regarding the origin of the fire.

The issue of whether or not Diamond State breached its obligations under the UTPA in its handling of the Colemans' claims will necessarily turn upon the question of whether it spoliated evidence, thereby rendering an adequate investigation impossible.  If it is determined that Diamond State did, in fact, spoliate evidence it may not rely on its own destruction of the fire scene as a reasonable basis under Mont. Code Ann. § 33-18-242(5) for failing to meet its duties under the UTPA. Accordingly, Diamond State's motion for summary judgment seeking dismissal of the Colemans' UTPA claims is properly denied.

**E.   Colemans' Motion for Partial Summary Judgment**

By way of their motion for partial summary judgment the Colemans seek to have the Court determine, as a matter of law, that Diamond State had a duty to conduct a reasonable investigation of the fire, and that it had a legal duty to preserve evidence.  By way of the present Order the Court has determined that Diamond State had a duty to preserve the evidence from the fire scene.  The Court has also determined that Diamond State's obligations under the UTPA with respect to the Colemans were triggered as of February 22, 2002.  Although the Colemans' summary judgment motion does not seek to establish any of the other elements of Diamond State's liability under any of the Colemans' theories of liability, the Court will treat its conclusions as to the existence of these legal duties as the law of the case.  *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 467 (5th Cir. 1999).  To that extent the Colemans' motion is granted.

**F.   Attorneys' Fees**

Diamond State moves for summary judgment barring the Colemans from recovering the attorneys' fees they incurred or paid as a result of the underlying lawsuit they filed against Kudrna.  Diamond State argues that Montana law does not allow the Colemans to recover those attorneys' fees.

Diamond State accurately recites the American Rule applicable to the issue of attorneys' fees. "Montana follows the general American Rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision." *Mountain West Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT 98, ¶ 14, 315 Mont 231, ¶ 14, 69 P.3d 652, ¶ 14 (2003). Additionally, a plaintiff cannot recover attorneys' fees as an element of damages attributable to a claim under the UTPA. *Sampson v. National Farmers Union Property and Cas. Co.*, 2006 MT 241, ¶ 22, 333 Mont. 541, ¶ 22, 144 P.3d 797, ¶ 22 (2006).

The Colemans contend the holdings in *Brewer* and *Sampson* are inapplicable to their claim for attorneys' fees and costs incurred and paid in the underlying action against Kudrna. Rather, the Colemans assert they are entitled to such an award as an element of tort damages recoverable under their spoliation claim. The thrust of the Colemans' argument is that but for Diamond State's spoliation of the evidence, they would have prevailed in their underlying Montana Residential Landlord and Tenant Act (MRLTA) claim against Kudrna, and they would have been entitled to recover their own attorneys' fees against Kudrna pursuant to the MRLTA. For the reasons stated below, the Court must conclude that even if the Colemans prevail on their negligent spoliation claim, they are precluded from recovering

the attorneys' fees and costs incurred or paid in the underlying action against Kudrna.

The Colemans had the option of abandoning their liability claim against Kudrna, and electing to pursue only their spoliation claim against Diamond State.  As a matter of law, the Colemans' spoliation claim does not require that they first pursue their liability claim against Kudrna.  *Oliver*, 1999 MT 328, ¶ 49, 297 Mont. 336, ¶ 49, 993 P.2d 11, ¶ 49.  Furthermore, the UTPA did not bar the Colemans from pursuing their spoliation claim because the limitation imposed in Mont. Code Ann. § 33-18-242(6)(b) only prevents a third party from filing a claim "under this section" before the underlying liability claim is resolved. Section 33-18-242(6)(b), therefore, does not bar a third party from filing a spoliation claim prior to the resolution of the underlying liability claim.  The Colemans could have simply proceeded with their spoliation claim against Diamond State without incurring the expense of the litigation against Kudrna.

Alternatively, the Colemans could have brought their spoliation claim in the action against Kudrna.  Montana law allows permissive joinder of additional defendants as follows:

> All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

ORDER/ PAGE 26

Mont. R. Civ. P. 20.  *See Boyd v. Travelers Ins. Co.*, 652 N.E. 2d
267, 272-73 (Ill. 1995) (noting that with regard to spoliation
claims and underlying liability claims, the joinder of parties
and consolidation of trials promotes fairness and consistency,
and is appropriate due to the common issues of fact relative to
causation in both the underlying liability claim and the
spoliation claim).

The peculiar nature of a spoliation claim necessarily
involves a consideration of the merits of the underlying
liability claim.  *United Services Automobile Association v.
Superior Court*, 67 Cal. Rptr. 2d 122, 124 (Cal. App. 4ᵗʰ Dist.
1997).  Regardless of the procedure followed, a jury considering
a spoliation claim would necessarily have to decide whether the
plaintiff would have obtained a more favorable result in the
underlying liability claim if the missing evidence had been
available to present to the trier of fact in that case.  *Id*. 67
Cal. Rptr. 2d at 125.  Therefore, there exist sound practical
reasons for joining the claims, such as "needless duplication of
effort, two trials involving much the same evidence, time and
expense imposed on litigants and the judicial system, and a jury
uniquely equipped to determine how the [plaintiffs] were harmed."
*Id*. (quoting *Smith v. Superior Court*, 198 Cal. Rptr. 829, 837
(Cal. App. 3d 1984)).  *See also Miller v. Allstate Ins. Co.*, 573
So. 2d 24, 31 n.13 (Fla. 3ʳᵈ Dist. App. 1990) (noting that it is

more efficient to have the same jury consider both the merits of

the underlying liability claim, and whether the loss of critical

evidence had any effect on the plaintiff's inability to prove the

underlying liability claim).

> A single trier of fact would be in the best position to
> resolve all the claims fairly and consistently.  If a
> plaintiff loses the underlying suit, only the trier of fact
> who heard the case would know the real reason why.  This
> factor is important because a spoliator may be held liable
> in a negligence action *only* if its loss or destruction of
> the evidence caused a plaintiff to be unable to prove the
> underlying suit.

*Boyd v. Travelers Ins. Co.*, 652 N.E. 2d 267, 272 (Ill. 1995).

*See also Callahan v. Stanley Works*, 703 A.2d 1014, 1019 (N.J.

Super. L. Div. 1997) (noting the efficiency in having the same

jury consider both the underlying liability claim and the

spoliation claim).

The Colemans made a choice to pursue the underlying

liability claim against Kudrna.  As a matter of law, they were

not obligated to do so, and they had available to them the

ability under Mont. R. Civ. P. 20 to join Diamond State in their

action against Kudrna.  The Colemans chose to pursue their

liability claim against Kudrna fully aware of the fact that they

did not have any physical evidence available to them from the

scene of the fire.  The Colemans did so at the risk of not

succeeding on their claim and incurring attorneys' fees in the

process.  Because the Colemans voluntarily chose to prosecute the

case against Kudrna, and did so without joining their spoliation

claim, they cannot recover the attorneys' fees they incurred in that case as an element of damages.  This conclusion is consistent with the general obligation imposed upon a claimant to mitigate their damages.  *Harrington v. Holiday Rambler Corp.*, 176 Mont. 37, 42, 575 P.2d 578, 581 (1978).  Moreover, a rule allowing the recovery of attorneys' fees in these circumstances would lead to needless duplicative litigation.  The Colemans have presented no authority that supports their argument. Consequently, Diamond State's motion for partial summary judgment on the issue of attorneys' fees is granted.

Based on the foregoing, the Court hereby enters the following:

### ORDER

1.  Plaintiffs' Motion for Partial Summary Judgment is **GRANTED** to the extent that Diamond State's conduct is governed by its duty to preserve evidence from the fire scene and its duties under the UTPA, and those duties are hereby established as the law of the case.

2.  Diamond State's Motion for Summary Judgment is **DENIED.**

3.  Diamond State's Motion for Partial Summary Judgment is **GRANTED** and the Colemans' claim for attorneys' fees incurred or paid in the underlying state court action is **DISMISSED.**

DATED this 5th day of June, 2008.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge