## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

COLEMAN CONSTRUCTION, INC.,
FRED COLEMAN and KATHY COLEMAN,                 CV 05-148-M-JCL

                    Plaintiffs,

                                                ORDER

          vs.

DIAMOND STATE INSURANCE COMPANY,

                    Defendant.
_____

     Pending before the Court are two Motions in Limine of the
Plaintiffs, collectively referred to as the Colemans.   The
factual background underlying this case is fully set forth in the
Court's Order upon the parties' motions for summary judgment, and
need not be repeated herein.

     The Colemans' motions are filed relative to two aspects of
this case.   First, the Colemans move to exclude evidence of the
defense verdict issued in the Colemans' underlying lawsuit
against Kudrna.   Second, the Colemans move to exclude evidence
acquired or developed after Diamond State declined to proceed
with a cause and origin investigation on February 13, 2002, and
after Diamond State authorized Kudrna to clean up the scene of
the fire on February 21, 2002.

## I.  DISCUSSION

     The purpose of a motion in limine is to obtain a ruling on
the admissibility of evidence prior to trial.   The motion

ORDER - Page 1

> should be granted only if the evidence is clearly not
> admissible for any purpose. [...]  If there is any question
> on the issue, rather than barring the evidence before trial,
> the Court should reserve ruling on questions of
> admissibility until they actually arise, in the context of
> the trial.

*Boim v. Quranic Literacy Institute*, 349 F. Supp. 2d 1097, 1102

(N.D. Ill. 2004) (internal citations omitted).  Restated,

> [m]otions in limine are generally used to ensure evenhanded
> and expeditious management of trials by eliminating evidence
> that is clearly inadmissible for any purpose.

*Indiana Ins. Co. v. General Electric Co.*, 326 F. Supp.2d 844,

846-47 (N.D. Ohio 2004) (internal citations omitted).  A court's

evidentiary rulings are committed to the sound discretion of the

Court.  *Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th

Cir. 2004).

## A.  Evidence of Kudrna's Defense Verdict

The Colemans request that the Court bar Diamond State from

introducing any evidence of the jury's verdict issued in favor of

Kudrna in the underlying action.  The Colemans argue the verdict

is not probative of any factual matter at issue in this case.

In this action, the Colemans allege Diamond State is liable

for its violations of two provisions of the Montana Unfair Trade

Practices Act (UTPA).  They allege Diamond State refused to pay

their insurance claim "without conducting a reasonable

investigation based upon all available information" in violation

of Mont. Code Ann. § 33-18-201(4), and that Diamond State

neglected "to attempt in good faith to effectuate [a] prompt,

fair, and equitable settlement of [their] claim[] in which liability ha[d] become reasonably clear[]" in violation of Mont. Code Ann. § 33-18-201(6).

In addition to the UTPA claims, the Colemans allege Diamond State is liable for failing to preserve evidence from the fire. In view of its UTPA and spoliation claims, pursuant to *Graf v. Continental Western Ins. Co.*, 2004 MT 105, 321 Mont. 65, 89 P.3d 22 (2004) the Colemans argue the underlying defense verdict is irrelevant to the issue of whether Diamond State performed its legal duties.

In the *Graf* case the court considered the relevance of an underlying jury verdict to a statutory defense available to an insurer under the UTPA.  The UTPA provides as follows:

> An insurer may not be held liable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim[.]

Mont. Code Ann. § 33-18-242(5).

The issue in *Graf* was whether an insurer could rely on a defense verdict reached in the underlying liability suit against an insured to establish, as a matter of law, that "the insurer had a reasonable basis in law or in fact" to avoid liability pursuant to Mont. Code Ann. § 33-18-242(5).  The court held that a defense verdict in the underlying suit "does not, as a mater of law, establish a 'reasonable basis' defense under § 33-18-242(5)".  *Graf*, at ¶¶ 15 and 18.

ORDER - Page 3

Diamond State argues that the holding in *Graf* was limited to the legal issue of whether an underlying defense verdict holds the force of law, i.e. whether it conclusively establishes the defense under § 33-18-242(5).  Consequently, Diamond State contends that although the verdict is not conclusive as a matter of law, it still has probative value to the factual issues raised by the Colemans' UTPA claims.  Specifically, Diamond State contends the verdict has probative value to the issue of whether liability was reasonably clear for purposes of the Colemans' claim under § 33-18-201(6).  The Court disagrees with Diamond State because the rationale underlying the holding in *Graf* is, in substance, based on the verdict's lack of probative value to the UTPA claims.

The factual issues which arise relative to the UTPA claims the Colemans advance in this case are different from the factual issues which arose in the Colemans' underlying liability suit against Kudrna.  *See Graf*, 2004 MT 105, ¶¶ 12 and 15, 321 Mont. 65, ¶¶ 12 and 15, 89 P.3d 22, ¶¶ 12 and 15 (quoting *Klaudt v. Flink*, 202 Mont. 247, 252-53, 658 P.2d 1065, 1067-68 (1983)).  As in *Graf*, the issue in the underlying lawsuit against Kudrna was whether she was liable for the damaged caused by the fire, whereas the issue in this case

> is whether the insurance carrier conducted a reasonable investigation and attempted in good faith to effectuate settlement of the claim when liability had become reasonably clear.

ORDER - Page 4

*Graf*, at ¶ 15.  A jury verdict in favor of an insured "is not
tantamount to a finding that the insurer did not violate the
UTPA."  *Id*.

The court in *Graf* further recognized that a jury considering
an insured's liability does not have before it all of the factual
information relative to an insurer's performance of its
obligations under the UTPA.  A jury's verdict in an underlying
liability claim against an insured is not necessarily based on
any information the insurer had available to it when it was
handling a third party's insurance claim; a liability claim does
not necessarily involve the presentation of all the facts
relevant to a UTPA claim.  *Graf*, at ¶ 17.  UTPA claims "focus on
what the insurer knows at a particular point in time-before
trial, during the investigative settlement stage."  *Id*.  An
insurer's performance of its obligations under Mont. Code Ann. §
33-18-201(4) and (6) "is to be retrospectively measured" based on
all the investigative reports, evaluations and correspondence in
the insurer's claim file.  *Id*. at ¶¶ 17-18.  These factual
considerations are different from a jury's consideration of the
merits of an underlying liability claim against an insured.  *Id*.
at ¶ 17.  Therefore, there is no basis for concluding that the
jury's verdict as to an insured's liability resolves any factual
issue relative to the UTPA claims.  *Id*.  Consequently, the jury
verdict has no probative value to the factual issues involved in
the UTPA claims.

ORDER - Page 5

Additionally, as a matter of law, a third party claimant need not establish the liability of an insured as a condition precedent to the litigation of UTPA claims. *Graf*, at ¶ 14 (quoting *Lough v. Insurance Co. Of North America*, 242 Mont. 171, 789 P.2d 576 (1990)). A subsequent finding of no liability is not relevant to the factual issue of whether an insurer should have found liability to be "reasonably clear" at the time it adjusted a third party's insurance claim. An insurer's obligation to negotiate in good faith and to effect a prompt settlement under § 33-18-201(6) "does not mean that liability has been established." *Klaudt v. Flink*, 202 Mont. 247, 252-53, 658 P.2d 1065, 1067 (1983) (superseded by statute on other grounds).

Based on the foregoing, the Court concludes Kudrna's jury verdict is not relevant to the issues in this case. Relevant evidence is only that which has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 402. The jury's verdict finding that Kudrna was not liable for causing the fire is not relevant to whether Diamond State conducted a reasonable investigation, or whether Kudrna's liability might have been reasonably clear at the time Diamond State handled the Coleman's claim. Rather, Diamond State's compliance with the UTPA standards is to be retrospectively measured independent of whether the insured is

found not liable.   Therefore, the Colemans' motion to exclude the
jury verdict is **GRANTED**.

## B.  After Acquired Evidence

The Colemans move to exclude evidence of events which
occurred subsequent to Diamond State's decision not to hire a
cause and origin expert to investigate the fire, and subsequent
to its decision to clean up and dispose of the debris from the
scene of the fire.  Specifically, the Colemans request that the
Court exclude evidence that (1) subsequent wind and weather
conditions scattered fire debris which would have adversely
affected or prevented a cause and origin investigation, and (2)
even if a cause and origin investigation had been conducted, any
such investigation would have been of no use because a cause of
the fire could not have been determined.

The Colemans assert that Diamond State's decision to forgo a
full investigation could not have been based on the fact that the
wind and weather had scattered the evidence of the fire, or that
such an investigation would have been futile, because that
information was not available to Diamond State at the time it
made its decision not to conduct a full investigation.
Therefore, the Colemans argue Diamond State cannot rely on those
reasons for not conducting an investigation.  The Colemans
contend that Diamond State simply decided that an investigation
was not necessary to the resolution of Kudrna's first party
insurance claim, and it failed to consider whether an

ORDER - Page 7

investigation would be useful to address the damages and losses
the Colemans suffered in the fire.

Both parties agree that the rule stated in *EOTT Energy
Operating Ltd. Partnership* governs the resolution of at least a
portion of the Colemans' motion.  *EOTT Energy Operating Ltd.
Partnership v. Certain Underwriters at Lloyd's of London*, 59 F.
Supp. 2d 1072 (D. Mont. 1999), remanded on jurisdictional
grounds, *EOTT Energy Operating Ltd. Partnership v. Winterthur
Swiss Ins. Co.*, 257 F.3d 992 (9th Cir. 2001).  In *EOTT* the court
held that an insurer's performance of its obligations under the
UTPA is judged in light of the law as it existed at the time it
handled a claim, and the facts as they were known to the insurer
at that time.  *EOTT*, 59 F. Supp. 2d at 1076.  *See also Shilhanek
v. D-2 Trucking, Inc.*, 2003 MT 122, ¶ 30, 315 Mont. 519, ¶ 30, 70
P.3d 721, ¶ 30 (2003).  An insurer attempting to establish that
it satisfied its duties under the UTPA, or attempting to
establish it had a "reasonable basis" for its conduct pursuant to
Mont. Code Ann. § 33-18-242(5), may present "only those facts
known to [the insurer] at the time [it] made [its] decision to
deny coverage."  *EOTT*, 59 F. Supp. 2d at 1076.

In this case, however, Diamond State was not subject to the
specific obligations imposed under the UTPA which the Colemans
advance as claims in this case until after the Colemans submitted
their insurance claim to Diamond State on February 22, 2002.  As
concluded in the Court's contemporaneously issued summary

ORDER - Page 8

judgment ruling, the provisions of the UTPA, and an insurer's liability to a claimant for violations of specific provisions of the UTPA, are not triggered unless an insurance claim is made. *Stuart v. State Farm Mut. Auto. Ins. Co.*, 27 M.F.R. 453, 458-9 (D. Mont. 2000) (citing *McNeil v. Currie*, 253 Mont. 9, 17, 830 P.2d 1241, 1246 (1992)).  Therefore, Diamond State's specific obligation to conduct a reasonable investigation under Mont. Code Ann. § 33-18-201(4) did not begin until February 22, 2002. Diamond State denied the Colemans' claim on April 26, 2002. Those dates, therefore, establish the relevant time frame for identifying what information Diamond State possessed when it was subject to obligations under the UTPA.

Based on the foregoing, the time frame for the factual information that is relevant to the Colemans' UTPA claim is broad.  There are numerous factual matters and events which arose during the referenced time frame that would be relevant to the Colemans' UTPA claims, including:  (1) the condition of the post-fire scene from the time of the fire at least until April 26, 2002; (2) weather conditions impacting the scene of the fire during that time period; (3) Diamond State's prior decision not to hire a cause and origin expert; and (4) Diamond State's prior decision to clean up the fire scene.  All of these circumstances and events are relevant to the retrospective assessment of the reasonableness of Diamond State's investigation as required under Mont. Code Ann. § 33-18-201(4), the clarity of Kudrna's liability

and Diamond State's resulting duty to settle the Colemans' claim as required under Mont. Code Ann. § 33-18-201(6), and whether Diamond State had a reasonable basis for its actions under Mont. Code Ann. § 33-18-242(5).  In light of the applicable relevant time frame *EOTT* does not bar any of the factual information at issue in the Colemans' motion and, therefore, the motion is **DENIED** in this respect.

Aside from the application of the rule in *EOTT*, the real issue raised in the Colemans' motion is whether Diamond State is limited with regard to the evidence on which it can rely to defend against the Colemans' spoliation claim.  In this regard, Diamond State proposes to offer the testimony of its expert, Chris Rallis.  Mr. Rallis' opinion is that it would not have been possible to determine the cause of the fire.  The Colemans assert that Mr. Rallis' opinion is based solely on his review of photographs of the scene of the fire taken before the scene was cleaned up; Mr. Rallis did not personally inspect the scene of the fire because it had been cleaned up.  Accordingly, the Colemans assert that Mr. Rallis' testimony is speculative, unsupported, and inadmissible under Fed. R. Evid. 702 and *Daubert*, infra.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert opinion testimony and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court requires the district court to act as a gatekeeper to ensure that expert testimony is both relevant and reliable before it is deemed admissible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Rulings on the admissibility of expert testimony under Fed. R. Evid. 702 are within the sound discretion of the trial court. *General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997).

In determining whether testimony is relevant and reliable the Court must engage in an assessment

> of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, at 592-93.  There are various factors which bear on the issue of whether certain testimony is sufficiently reliable, but the list of factors is not exclusive and the district court has "the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 & 152 (1999).  *Daubert* merely requires that all expert

ORDER - Page 11

testimony must satisfy a "standard of evidentiary reliability".

*Id.* at 149 (quoting *Daubert*, 509 U.S. at 590).  The requirement

> is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Kumho Tire*, at 152, 119 S. Ct. at 1176.

The Colemans make only a limited challenge to the reliability of Mr. Rallis' opinion testimony.  They contend, in conclusory fashion, that photographs of the scene of the fire cannot constitute "sufficient facts or data" to support Mr. Rallis' opinion.

As quoted above, Rule 702 requires that an expert's testimony must be based on "sufficient facts or data[.]"  Fed. R. Evid. 702(1).  The Colemans correctly argue that legally, *Daubert* and Rule 702(1) require that expert testimony may "not include unsupported speculation and subjective beliefs."  *Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).  The analysis of the sufficiency of the underlying facts supporting an expert opinion, however, is a quantitative analysis, rather than a qualitative analysis.  *United States v. W.R. Grace*, 455 F. Supp. 2d 1181, 1187 (D. Mont. 2006).  The quality of the factual basis underlying an expert opinion "goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."  *Hangarter v. Provident Life*

ORDER - Page 12

*and Accident Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004)
(quoting *Children's Broadcasting Corp. v. Walt Disney Co.*, 357
F.3d 860, 865 (8th Cir. 2004)).  It is only when an "expert's
opinion is so fundamentally unsupported that it can offer no
assistance to the jury" that the testimony must be excluded.
*Children's Broadcasting Corp.*, 357 F.3d at 865.

The Colemans challenge only the quality of the information
in the photographs of the scene of the fire on which Mr. Rallis
bases his opinion.  They do not, however, explain what is
insufficient about the photos, and the parties have not
identified for the Court the exact photographs on which Mr.
Rallis relied to form his opinion.  Therefore, without viewing
the photos the Court cannot conclude that the photos are so
fundamentally without any factual information so as to render Mr.
Rallis' opinion to be of no assistance to the jury.  Presumably,
the photos contained at least some images of scenes of the fire
which could conceivably provide a basis for an expert opinion.
Therefore, the Court finds the Colemans' challenges to Mr.
Rallis' opinion goes only to the weight of his proposed testimony
to be considered by the jury.  *See Hangarter*, 373 F.3d at 1017
n.14.

The Court also notes Mr. Rallis' opinion would assist the
jury as to factual matters relative to the Colemans' spoliation
claim.  The tort of negligent spoliation consists of the
following elements:

ORDER - Page 13

(1) existence of a potential civil action;

(2) a legal or contractual duty to preserve evidence relevant to that action;

(3) destruction of that evidence;

(4) significant impairment of the ability to prove the potential civil action;

(5) a causal connection between the destruction of the evidence and the inability to prove the lawsuit;

(6) a significant possibility of success of the potential civil action if the evidence were available; and

(7) damages[.]

*Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 41, 297 Mont. 336, ¶ 41, 993 P.2d 11, ¶ 41.  Mr. Rallis' proposed expert testimony is relevant to a jury's consideration of elements (4) through (6) above.  If a jury finds Mr. Rallis' opinion to be credible and agrees that the cause of the fire could not have been determined prior to the cleanup at the site, then a jury could conclude that the loss of the evidence from the scene of the fire did not impair the Colemans' ability to prove its claim against Kudrna, and did not affect the Colemans' possibility of success on their action against Kudrna.

Based on the foregoing, the Colemans' motion to exclude Mr. Rallis' testimony is **DENIED.**

**IT IS SO ORDERED.**

DATED this 5th day of June, 2008.

                    /s/ Jeremiah C. Lynch
                    Jeremiah C. Lynch
                    United States Magistrate Judge

ORDER - Page 14